# EXHIBIT 5

**DISTRICT OF COLUMBIA**
**OFFICE OF ADMINISTRATIVE HEARINGS**
441 4TH STREET, NW, SUITE 450 NORTH
WASHINGTON, DC 20001-2714
Tel: (202) 442-9094 · Fax: (202) 442-4789 · Email: oah.filing@dc.gov
eFiling: https://ecourt.oah.dc.gov/public-portal/

ACCEPTED FOR eFILING
Received: February 27, 2024 04:11 PM
Accepted: February 28, 2024 12:48 PM

# Request to Appeal a Decision by the Metropolitan Police I (MPD) Regarding a Concealed Pistol License

*Use this form if you want a hearing before an Administrative Law Judge because you disagree with a MPD decision to **deny, revoke, or limit a concealed pistol license**. Attach a copy of the MPD notice you are appealing.*

*If you wish to appeal a decision regarding a **firearm registration**, you must file a separate form for that purpose.*

## Section 1 – Contact Information

| | |
|---|---|
| Print Your Name:<br>Eric N. Christain, Jr. | Your Mailing Address:<br>1319 S Street SE<br>Washington, DC 20020 |
| Your Telephone:<br>202-528-0582 | |
| Your Email Address (*if any*):<br>ejchristian15@gmail.com<br>☐ I consent to receive documents by email only | Your Ward (*if you know*): |
| *If you have a representative for this case:* ||
| ☐ Non-Attorney Representative (as allowed by OAH Rule 2835)    ☒ Attorney ||
| Representative Name:<br>George L. Lyon, Jr. | Representative Telephone:<br>202-669-0442 |
| Representative Email Address:<br>gll@bergstromattorneys.com<br>☐ Consents to receive documents by email only | Representative Mailing Address:<br>1929 Biltmore Street NW<br>Washington, DC 20009 |

## Section 2 – Why do you need a hearing?

☐ MPD denied my application for a concealed pistol license.

☒ MPD revoked or limited my concealed pistol license.

☐ MPD issued a summary suspension or limitation of my concealed pistol license.

→ → → **Continue to second page** → → →

In the space below, give the reason(s) you disagree with MPD's decision and explain what you want the judge to do. Use an additional page if needed.
Please see the attached Memorandum.

## Section 4 – Language Access

Do you need OAH to provide an interpreter to help you participate in the hearing?

☐ YES   ☒ NO

If YES, what language do you need? _____

## Section 5 – Reasonable Accommodation

Do you need a reasonable accommodation to help you participate in the hearing?

☐ YES   ☒ NO

If YES, please explain: _____

## Section 6 – Who Prepared the Hearing Request?

Signature of the person who prepared the hearing request:

/s/ George L. Lyon,, Jr., DC Bar 388678                          2/27/2024
_____     _____     _____
Signature                              Print Name              Date

Email, telephone, mailing address of person who prepared hearing request (if not printed above):

Prepared by counsel
_____

_____

**Appeal of Eric N. Christian, Jr., proposed revocation**
**of concealed pistol license**

## MEMORANDUM

**To:    Office of Administrative Hearings**

**From: George L. Lyon, Jr., counsel to Eric N. Christian, Jr.**

**Re:    Proposed revocation of concealed pistol license**

## INTRODUCTION

This will constitute the Appeal of Eric N. Christian, Jr. to MPD's notice of proposed revocation of his concealed pistol license dated February 13, 2024, and emailed to him shortly after that date. *See* Exhibit 1.

## STATEMENT OF THE ISSUES.

May MPD revoke a concealed pistol license for alleged violation of a DCMR for which Mr. Christian has not been prosecuted?

Does the Chief possess the authority under District law to revoke a carry license for an unadjudicated alleged violation of a DCMR?

Is DCMR 22-2344.2 unconstitutional in violation of the Second Amendment given the lack of a well-established historical analogue relating to the carriage of firearms?

## STATEMENT OF THE CASE.

Mr. Christian seeks review of the decision of the MPD Chief's designate to revoke his concealed pistol carry license via a revocation notice dated February 13, 2024, and emailed to him shortly thereafter.

**Appeal of Eric N. Christian, Jr., proposed revocation
of concealed pistol license**

## STATEMENT OF FACTS.

Mr. Christian is a DC resident with a current DC Concealed Pistol License and active handgun registration certificates. He works as a driver for among other persons, high profile individuals such as sports figures and entertainers. This position makes him and his passengers potentially subject to criminal attack, such as a robbery. Mr. Christian has a clean record; he has never been arrested or convicted of a criminal offense.

Mr. Christian regularly carries his concealed firearm in a holster on his body.

On or about January 16, 2024, Mr. Christian was carrying his firearm outside his vehicle which was parked. He got in his vehicle and temporarily took his gun off for comfort. He started his car and pulled out into traffic. He then made a right hand turn and was stopped by MPD officers who asserted he had not signaled. Mr. Christian maintains he in fact did turn on his turn indicator and that the stop was a pre-textual stop as often happens to black men in the District. Mr. Christian therefore demands MPD produce the video record of the stop and events leading to it, including body worn camera evidence.

In the course of the traffic stop, MPD officers discovered that his firearm was not on his person, and took possession of the firearm. MPD subsequently issued the subject notice of proposed revocation of his CPL based on the alleged violation of DCMR §24-2344.2, which provides that, "A licensee shall carry any pistol in a

**Appeal of Eric N. Christian, Jr., proposed revocation
of concealed pistol license**

holster on their person in a firmly secure manner that is reasonably designed to

prevent loss, theft, or accidental discharge of the pistol." Mr. Christian has been

charged with no offense relating to the above-described  incident.

## *ARGUMENT.*

**I.    *Revocation of Mr. Christian's concealed pistol license cannot be predicated
on an alleged violation of a regulation for which he has not been charged
and convictedt.***

The District's concealed pistol licensing scheme operates under a

Constitutional holding by the D.C. Circuit that the right to keep and bear arms for

personal protection is a *core* Second Amendment right. *District of Columbia v.

Heller,* 554 U.S. 570 (2008). *See also Wrenn v. District of Columbia,* 864 F.3d 650

(D.C. Circuit 2017). That holding was affirmed in June of 2022 by the Supreme

Court in the case of *New York State Rifle & Pistol Ass'n v. Bruen,* 142 S.Ct. 2111

(2023).

The Supreme Court has observed that "[t]he mere fact that a man [or woman]

has been arrested has very little, if any, probative value in showing that he [or she]

has engaged in any misconduct." *Schware v. Bd. of Bar Exam. of State of N.M.*, 353

U.S. 232, 241 (1957). *See also Nelson v. Colorado*, 137 S. Ct. 1249, 1255-56 (2017)

("Axiomatic and elementary, the presumption of innocence lies at the foundation of

**Appeal of Eric N. Christian, Jr., proposed revocation
of concealed pistol license**

our criminal law.") (quotation and alteration omitted). Of course in this case, Mr.

Christian has not even been charged with a violation.

Even if Mr. Christian had been charged with violating the regulation in

question, "An arrest shows nothing more than that someone probably suspected the

person apprehended of an offense." *Schware*, 353 U.S. at 241. *See also United States

v. Berry*, 553 F.3d 273, 284 (3d Cir. 2009) ("[A] bare arrest record—without more—

does not justify an assumption that a defendant has committed other crimes").[1] Here,

of course, Mr. Christian has been charged with nothing.

Legendary jurist J. Skelly Wright had the occasion to consider this issue some

45 years ago in a case coincidently involving the then MPD Chief. Writing for the

---

[1] *See also United States. v. Hynes*, 467 F.3d 951, 957 (6th Cir. 2006) (upholding a
preliminary jury instruction that stated that a "defendant is presumed to be innocent unless
proven guilty. The indictment against the Defendant is only an accusation, nothing more.
It's not proof of guilt or anything else."); *Gregory v. Litton Sys. Inc.,* 316 F. Supp. 401, 403
(C.D. Cal. 1970) ("[I]nformation concerning a prospective employee's record of arrests
without convictions, is irrelevant to [an applicant's] suitability or qualification for
employment."), *modified on other grounds*, 472 F.2d 631 (9th Cir. 1972); *Dozier v.
Chupka*, 395 F. Supp. 836, 850 n.10 (S.D. Ohio 1975) (stating that the use of arrest records
was too crude a predictor of an employee's predilection for theft where there were no
procedural safeguards to prevent reliance on unwarranted arrests); *City of Cairo v. Ill. Fair
Empl. Prac. Comm.,* 8 Empl. Prac. Dec. (CCH) & 9682 (Ill. App. Ct. 1974) (concluding
that, where applicants sought to become police officers, they could not be absolutely barred
from appointment solely because they had been arrested, as distinguished from
convicted); *see also* EEOC Dec. 74 83, Â¶ 6424 (CCH) (1983) (finding no business
justification for an employer's unconditional termination of all employees with arrest
records (all five employees terminated were Black), purportedly to reduce thefts in the
workplace; the employer produced no evidence that these particular employees had been
involved in any of the thefts, or that all people who are arrested but not convicted are prone
towards crime in the future); EEOC Dec. 76 87, Â¶ 6665 (CCH) (1983) (holding that an
applicant who sought to become a police officer could not be rejected based on one arrest

**Appeal of Eric N. Christian, Jr., proposed revocation**
**of concealed pistol license**

D.C. Circuit he explained, "a collection of dismissed, abandoned or withdrawn arrest records are no more than gutter rumors when measured against any standards of constitutional fairness to an individual and, along with records resulting in an acquittal are not entitled to any legitimate law enforcement credibility whatsoever." *Utz v. Cullinane*, 520 F.2d 467, 479 (D.C. Cir. 1975). We suggest Judge Wright's opinion for the D.C. Circuit clearly establishes that bare arrest records or allegations such as in the revocation notice lack evidentiary value and should put MPD officials on notice for qualified immunity purposes. *See* 42 U.S.C. § 1983; *Pearson v. Callahan*, 555 U.S. 223 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The fact that Mr. Christian has not even been charged should further counsel MPD officials against abridgement of his Second Amendment rights.

Judge Wright further explained, "In our constitutional scheme, we operate under the salutary principle that an individual is presumed innocent of the charges of which he is stands accused unless he is found guilty via a process replete with substantial procedural safeguards. An arrest record, without more, is a fact which is absolutely irrelevant to the question of an individual's guilt." *Id.* at 478. He went on to say,

> Unresolved arrest records generally may well have significance for law
> enforcement purposes. They provide legitimate leads and questionable

---

five years earlier for riding in a stolen car when he asserted that he did not know that the car was stolen and the charge was dismissed).

**Appeal of Eric N. Christian, Jr., proposed revocation**
**of concealed pistol license**

> background information and may properly assist in resolving criminal
> actions. But charges resulting in acquittal clearly have no legitimates
> significance. Likewise, other charges which the government fails or
> refuses to press or which it withdraws are entitled to no greater
> legitimacy. They lose any tendency to show probable cause and should
> not be bootstrapped into any unearned and undeserved significance.

*Id.* at 179.

Noting that MPD there implied that the fact of arrest should generally be taken

as indicative of guilt, Judge Wright remonstrated that, "Due process obligates the

government to accord an individual the opportunity to disprove potentially damaging

allegations before it disseminates information that might be used to his detriment.

The proper forum for definitively adjudicating an individual's guilt or innocence is

a trial that conforms to constitutional strictures; if the government aborts that

procedure or if the individual is otherwise vindicated at trial, the Constitution

requires that he be treated as though he engaged in no criminal activity." *Id* at 48.

Quoting the court in *Menard v. Mitchell,* 430 F.2d 486, 492 (D.C. Cir. 1970), Judge

Wright stated, "'(T)here is [a] limit beyond which the government may not tread in

devising classifications that lump the innocent with the guilty.'"

Use of bare arrest data and mere suspect reports poses a whole other

Constitutional issue: invidious racial discrimination. This matter has been addressed

by the EEOC and federal courts in the context of employment decisions where use

**Appeal of Eric N. Christian, Jr., proposed revocation
of concealed pistol license**

of criminal history data may have an adverse impact on minority job applicants.[2]

The analysis is equally apposite to decisions on the Constitutional right to keep and

bear arms for self-protection.

      The danger of systemic racial discrimination by using bare arrest data or bare

incident reports is well established. The EEOC reports that arrest rates are

particularly high for African Americans and Hispanics. *See Enforcement Guidance*

*on the Consideration of Arrest and Conviction Records in Employment Decisions*

*under Title VII of the Civil Rights Act*.[3] African Americans and Hispanics are

arrested at a rate that is 2 to 3 times their proportion of the general population. *Id.*

(We note that Mr. Christian is an African American). The agency further points out

that studies have found that a sizable number of state and federal criminal record

databases include incomplete criminal records. *Id.* A 2011 study by the DOJ/BJS

reported that, as of 2010, many state criminal history record repositories still had not

recorded the final dispositions for a significant number of arrests and a 2006 study

---

[2] *See, e.g., Gregory v. Litton Systems, Inc.*, 316 F.Supp. 401, 403 (C.D.Cal.1970), modified on other grounds and affirmed as modified, 472 F.2d 631 (9th Cir. 1972) (holding that a private employer's practice of denying employment to individuals with arrest records violates Title VII of the Civil Rights Act of 1964 because "any policy that disqualifies prospective employees because of having been arrested once, or more than once, discriminates in fact against (N)egro applicants").

[3] *Id.* at notes 12 & 65-67, available at https://www.eeoc.gov/laws/guidance/enforcement-guidance-consideration-arrest-and-conviction-records-employment-decisions#sdendnote12sym.

**Appeal of Eric N. Christian, Jr., proposed revocation
of concealed pistol license**

by the DOJ/BJS found that only 50 percent of arrest records in the FBI's III database

were associated with a final disposition. *Id.* Additionally, reports have documented

that criminal records may be inaccurate. *Id.* Another report found that criminal

background checks may produce inaccurate results because criminal records may

lack "unique" information or because of "misspellings, clerical errors or

intentionally inaccurate identification information provided by search subjects who

wish to avoid discovery of their prior criminal activities." *Id.*

The EEOC states that Title VII of the 1964 Civil Rights Act calls for a *fact-
based analysis* to determine if an exclusionary policy or practice is job related and

consistent with business necessity. *Id.* Therefore, an exclusion based on an arrest, in

itself, is not job related and consistent with business necessity. *Id.* The EEOC notes

that an arrest, however, may in some circumstances trigger an inquiry into whether

the conduct underlying the arrest justifies an adverse employment action. *Id.*

Thus, a policy as is evident in this case of revoking a carry license based on

an alleged violation of a law for which Mr. Christian has not even been arrested

adversely impacts minorities such as he and thus constitutes unlawful discrimination

in violation of both the due process clause of the Constitution's Fifth Amendment

**Appeal of Eric N. Christian, Jr., proposed revocation
of concealed pistol license**

with respect to the District of Columbia and the equal protection component thereof.

*See Bolling v. Sharpe,* 347 U.S. 497 (1954).

The foregoing analysis is supported by the DC Code provision that authorizes the Chief to revoke a concealed carry license. Section 7–2509.05. Revocation and suspension of licenses, subsection (a)(1) provides: "The Chief may limit or revoke a license upon a finding that the licensee no longer meets the requirements of § 22-4506 and this subchapter, or as a penalty as specified in this unit." There is no question as to Mr. Christian meeting the requirements of both Section 22-4506 and the requirements of the concealed pistol licensing chapter. The only question is whether the Chief has the authority to revoke a license as a penalty absent a prosecution and finding of guilt.

Penalties are governed DC Code § 7–2509.10, which provides in toto:

**(a)(1)** Except as otherwise provided in this subchapter, a person convicted of a violation of a provision of this subchapter, or rules or regulations issued under the authority of this subchapter, shall be fined not more than the amount set forth in § 22-3571.01, or imprisoned for not more than 180 days.

**(2)** Civil fines, penalties, and fees may be imposed as alternative sanctions for any infraction of the provisions of this subchapter, or any rules or regulations issued under the authority of this subchapter.

**(b)** All prosecutions for violations of this subchapter shall be brought in the name of the District of Columbia and prosecuted by the Office of the Attorney General for the District of Columbia.

**Appeal of Eric N. Christian, Jr., proposed revocation**
**of concealed pistol license**

The above provision clearly indicates that penalties are only authorized via a prosecution brought by the Office of the Attorney General and that fines, penalties and fees may be imposed as alternative sanctions in such a prosecution. If the prosecution results in a finding of a violation, only then is the Chief authorized to revoke a carry license as an alternative sanction penalty. The penalty section grants no separate authority to the Chief to impose a penalty.

**II.     *To the extent DCMR 22.2344.2 applies to this case, it is unconstitutional in violation of the Second Amendment.***

Beyond the infirmities of MPD's proposed revocation of Mr. Christian's carry license discussed above, there is a Second Amendment issue. The Supreme Court reaffirmed and provided detailed guidance that restrictions on Second Amendment liberties must be justified by reference to the text of the Second Amendment and the Nation's history and tradition of firearms regulation. *New York State Rifle & Pistol Association v. Bruen,* 142 S.Ct. 2111. Other than historical restrictions that prohibited the concealed carry of firearms while allowing open carry, there is no historical tradition of denying the right to bear a firearm based upon how one carries the firearm, much less on matters not resulting in criminal charges. Moreover, under *Bruen,* the burden is on the government to justify that its action is consistent with

**Appeal of Eric N. Christian, Jr., proposed revocation**
**of concealed pistol license**

the nation's historical tradition of firearms regulation. And MPD cannot meet that

burden.

In *Bruen* the Court stated:

We reiterate that the standard for applying the Second Amendment is
as follows: When the Second Amendment's plain text covers an
individual's conduct, the Constitution presumptively protects that
conduct. The government must then justify its regulation by
demonstrating that it is consistent with the Nation's historical tradition
of firearm regulation. Only then may a court conclude that the
individual's conduct falls outside the Second Amendment's
"unqualified command." *Konigsberg [v. State Bar of California]*, 366
U.S., [36,] 50, n. 10 [(1961)].

*Bruen*, 142 S.Ct. at 2129-30.

The court further explained,

The test that we set forth in *Heller* and apply today requires courts to
assess whether modern firearms regulations are consistent with the
Second Amendment's text and historical understanding. In some cases,
that inquiry will be fairly straightforward. For instance, when a
challenged regulation addresses a general societal problem that has
persisted since the 18th century, the lack of a distinctly similar
historical regulation addressing that problem is relevant evidence that
the challenged regulation is inconsistent with the Second Amendment.
Likewise, if earlier generations addressed the societal problem, but did
so through materially different means, that also could be evidence that
a modern regulation is unconstitutional. And if some jurisdictions
actually attempted to enact analogous regulations during this
timeframe, but those proposals were rejected on constitutional grounds,

**Appeal of Eric N. Christian, Jr., proposed revocation
of concealed pistol license**

> that rejection surely would provide some probative evidence of
> unconstitutionality.

*Id.* at 2131.

It requires little analysis to determine that there is no historical analogue to denying the right to possess or carry a firearm based upon how such a firearm is carried, much less on allegations not resulting in a conviction.

We are aware of nothing approaching a well-established historical analogue to support DCMR 22.2344.2, and the obligation rests on the District, not on Mr. Christian, to justify that the regulation is consistent with the Nation's historic regulation of firearms. A host of Second Amendment restrictions are currently being litigated around the Nation and a plethora of historic statutes have been cited by defendant jurisdictions, including the District, to support firearm regulations under attack. Review of the records in those cases fails to find any analogous law in the relevant time frame – the founding era – that would support the regulation in question here. While there were laws regulating the storage or transport of gun powder, as the Supreme Court noted in *Bruen,* there laws were fire safety regulations, and entirely different "how" and "why" to the regulation here at issue. As such, the conclusion that DCMR 22.2344.2  is unconstitutional is manifest.

Of course, "the right secured by the Second Amendment is not unlimited." *D.C. v. Heller*, 554 U.S. at 626. In *Heller*, the Supreme Court held that the Second

**Appeal of Eric N. Christian, Jr., proposed revocation**
**of concealed pistol license**

Amendment does not prohibit measures that have historically constrained the right to keep and bear arms such as "longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626–27. *See also McDaniel v. City of Chicago, Ill.*, 561 U.S. 742, 786 (2010) ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures…We repeat those assurances here.").

In *Heller* and *McDonald* the Court recognized that the Second Amendment protects "the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. at 2122. In *Wrenn v. D.C.*, 864 F.3d at 661, the D.C. Circuit held that the "individual right to carry common firearms beyond the home for self-defense—even in densely populated areas, even for those lacking special self-defense needs—falls within the core of the Second Amendment's protections." And in *Bruen*, the Supreme Court held "consistent with *Heller* and *McDaniel*, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." 142 S. Ct. at 2122

Courts previously used a "two-step" framework in analyzing Second Amendment challenges that combined history with means-end scrutiny. *See e.g.,*

13

**Appeal of Eric N. Christian, Jr., proposed revocation of concealed pistol license**

*Heller v. D.C.*, 670 F.3d 1244, 1252 (D.C. Cir. 2011) ("We ask first whether a particular provision impinges upon a right protected by the Second Amendment; if it does, then we go on to determine whether the provision passes muster under the appropriate level of constitutional scrutiny."). With respect to the first step, courts generally considered whether a regulation burdened the type of people and conduct traditionally and historically covered within the scope of the Second Amendment. *See e.g., Medina v. Whitaker*, 913 F.3d 152, 158–60 (D.C. Cir. 2019) (finding that history and tradition support excluding someone with a felony conviction from the scope of the Second Amendment); *United States v. Carpio-Leon*, 701 F.3d 974, 979 (4th Cir. 2012) (finding that history and tradition support excluding illegal aliens from the scope the Second Amendment).

In *Bruen,* the Supreme Court "decline[d] to adopt that two-part approach," finding it to be "one step too many" and concluding that "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 142 S.Ct. at 2126–27. Following *Bruen*, a court must analyze a challenge to the Second Amendment solely by relying on part one of the previously used two step framework. *See id.* To put it more clearly, the Court wrote:

> We hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit

**Appeal of Eric N. Christian, Jr., proposed revocation
of concealed pistol license**

> that the regulation promotes an important interest. Rather, the
> government must demonstrate that the regulation is consistent with this
> Nation's historical tradition of firearm regulation. Only if a firearm
> regulation is consistent with this Nation's historical tradition may a
> court conclude that the individual's conduct falls outside the Second
> Amendment's "unqualified command."

*Id.* at 2126 (quoting *Konigsberg v. State Bar of Cal.,* 366 U.S. 36, 50, n.10 (1961).

The government cited a variety of historical sources from the late 1200s to the early 1900s, but the Court ultimately found that "the historical record compiled by respondents [did] not demonstrate a tradition of broadly prohibiting the public carry of commonly used firearms for self-defense." Id. at 2135–38. Consequently, it held that the proper-cause requirement was unconstitutional. *Id.* at 2138. By the same token, DCMR 22-2344.2's broad limitation of the ability to transport/carry a firearm is not supported by the historical record and is thus invalid in violation of the Second Amendment.

In *Allen v. District of Columbia,* Case 1:20-cv-02453-TSC Doc. 29 (D.D.C. Mar. 31, 2023), the D.C. District Court considered the plaintiff's Second Amendment challenge to MPD's interpretation of "propensity for violence or instability" under 24 DCMR § 2335.1(d). *Id.* at 17. There, MPD assessed suitability by giving the same weight to all criminal history incidents (convictions or not) and greater weight to the number of incidents without regard to their disposition. *Id.* at

**Appeal of Eric N. Christian, Jr., proposed revocation
of concealed pistol license**

17. In that case the government failed to provide any historical showing to support
its action in denying plaintiff's carry license application. *Id.* at 18.

The court held it was bound to follow *Bruen*. *Id.* at 17. Because *Bruen*
maintained step one of the previous two-step framework, the court stated it must
determine whether the plaintiff's proposed conduct (i.e., publicly carrying a pistol)
was covered by the Second Amendment. *Id*. DC argued the Second Amendment is
limited to "typical" citizens who present a "common" level of risk. *Id.*, DC argued
that although plaintiff had never been convicted, his six prior arrests show "that he
has a 'propensity' for placing himself in the middle of activities that have a
correlation to gun violence: drugs and gambling." *Id.* Because "States have long
excluded 'unvirtuous' individuals from the right to bear arms," DC claimed the
plaintiff was not the "typical" citizen covered by the Second Amendment. *Id.*

The plaintiff contended he was a "responsible, law-abiding citizen," and that
DC "relied on years-old disproven allegations, non-violent juvenile drug charges
handled outside the adult criminal system, and non-violent gambling charges" in
reaching its decision. *Id.* He further argued that Black individuals, like himself, "are
more likely to be stopped or arrested by police, are more likely to be wrongfully
convicted, and thus are more likely to suffer any collateral consequences associated

**Appeal of Eric N. Christian, Jr., proposed revocation**
**of concealed pistol license**

with having a criminal record—even a record of unproven charges that the government itself decided not to pursue." *Id.* at 17-18.

The court held the District failed to marshal any evidence or adequately explain how history and tradition supported excluding someone from the Second Amendment's scope because they were arrested but not convicted. *Id.* at 18. Hence, the court agreed with the plaintiff that "it is not necessarily or universally true" that a person with a criminal record will have a propensity for violence. *See Id.*

Likewise, the court stated that "[t]he mere fact that a man has been arrested has very little, if any, probative value in showing that he has engaged in any misconduct." *Id., citing Schware v. Bd. of Bar Exam. of State of N.M.*, 353 U.S. at 241. Since the plaintiff was "not a convicted felon or otherwise subject to another 'longstanding prohibition[] on the possession of firearms' that would have excluded him." *Rahimi*, 61 F.4th at 452 (internal citation omitted), the court held that he stated a Second Amendment claim against the District, explaining, "[T]he fact that [the plaintiff] may have been suspected of criminal conduct in the past (but not charged) does not permit Defendants to restrict his Second Amendment rights." *Id.* at 1.

Thus, as *Bruen* makes clear, the burden is on the government to justify that a firearms restriction is consistent with the nation's historical tradition of firearms

**Appeal of Eric N. Christian, Jr., proposed revocation**
**of concealed pistol license**

regulation. MPD's revocation  has not met that burden so far and we suggest MPD

cannot meet that burden at all.

      For all of these reasons MPD's decision to revoke Mr. Christian's carry

license must be reversed.

                     Respectfully submitted,

                     **ERIC N. CHRISTIAN, JR.**

                     /s/ George L. Lyon, Jr.
                     *His  Counsel*

Bergstrom Attorneys
1929 Biltmore Street NW
Washington, DC 20009
gll@bergstromattorneys.com
202-669-0442
Fax: 202-483-9267
February 27, 2024

cc:    Lt. Michael O'Harran, MPD, via email
       Lt. Brian N. Johnson, MPD, via email
       Firearms.adminbox@dc.gov

Exhibit 1

 Concealed Carry Pistol License

## Notice of Revocation

Metropolitan Police Department · Firearms Registration Branch ·441 4th Street NW, Suite #550S · Washington, DC 20001 · (202) 727-4275

## Licensee Information

| Christian Jr. | Eric | | N. |
|---|---|---|---|
| *Last Name* | *First Name* | | *Middle Initial* |
| **1319 S STREET SE** | **Washington** | **DC** | **20020** |
| *Home Street Address* | *City* | *State* | *ZIP Code* |

February 13, 2024

Licensee:

A determination has been made to **revoke** your concealed carry pistol license. The Firearms Control Regulations Act of 1975, D.C. Official Code § 7-2501.01 *et seq.*, and its implementing regulations, D.C. Mun. Regs. tit. 24, § 2300, *et seq.*, specify certain licensing requirements for those intending to carry a concealed pistol. The Metropolitan Police Department (MPD) is authorized to deny a license when an inspection reveals that the applicant is not qualified to receive or not qualified to continue to hold the license. Under D.C. Code § 7-2509.05(a) (1) and D.C. Mun. Regs. tit. 24, § 2341.1, MPD may also revoke a license when it is determined that a current licensee no longer satisfies one or more of the concealed carry license qualifications or failed to comply with one or more requirements or duties imposed upon the licensee by the Act or its regulations.

*This action is being taken based on a background review that on 1/16/24 in which you were stopped in D.C. for a Pistol Violation in which your registered firearm (SERIAL # BTGL194) taken as evidence (CCN: 24-008-014).*

**DCMR§ 24-2344.2 A licensee shall carry any pistol in a holster on their person in a firmly secure manner that is reasonably designed to prevent loss, theft, or accidental discharge of the pistol.**

Under D.C. Code § 7-2509.05(a) (1) and D.C. Mun. Regs. tit. 24, § 2341.1, this serves as notice of MPD's intent to revoke your license. Unless you appeal this revocation or at the time it becomes final you are required to return your concealed pistol license to the Firearm Registration Branch (441 4th Street NW, Suite #550S, Washington, DC 20001).

The Chief has determined that you WOULD meet the eligibility requirements for the prerequisite registration certificate. D.C. Code § 7-2509.02(a)(2); 24 DCMR §§ 2332.1(b).2335.1(a). You may appeal this decision by submitting a written request to the Office of Administrative Hearings (OAH) within fifteen (15) days after receipt of this notice. The appeal must be submitted to **OAH.DC.GOV.** The appeal should contain a copy of this notice; a description of the reasons why you believe this action was in error; all written materials that you wish the board to consider; and your full name, address, email address, and telephone number.

You must first resolve your registration eligibility with MPD before OAH may consider your CPL appeal.

Sincerely,

Firearms Registration Branch

**Firearms.adminbox@dc.gov**