# EXHIBIT 12

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LYNNE ANNE-BRIGITTE RUSSELL,** *et al.*, <br><br> **Plaintiffs,** <br><br> v. <br><br> **DISTRICT OF COLUMBIA,** *et al.*, <br><br> **Defendants.** | No. 1:24-cv-01820-JDB |

## DECLARATION OF STEPHEN AMODEO

Pursuant to 28 U.S.C. § 1746, I, Stephen Amodeo, declare as follows:

1. I am over the age of 18 and competent to render the testimony contained herein based upon my personal knowledge, information provided to me by other District of Columbia (District) employees, and documents that I have reviewed.

2. I have been employed by the District of Columbia Metropolitan Police Department (MPD) since 2009. In June 2022, I was assigned as a lieutenant to the Technical and Analytical Services Bureau's Records Division, overseeing the Firearms Registration Branch. In December 2023, I was transferred to my current position as a lieutenant in the Homeland Security Bureau's Real Time Crime Center.

3. During my time in the Records Division/Firearms Registration Branch, my responsibilities included deciding whether to approve or deny applications for firearm registration and concealed pistol licenses, as well as whether to revoke existing firearm registration and concealed pistol licenses. In performing those duties, I reviewed reported

violations of the District's holster regulation, 24 DCMR § 2344.2, and determined whether individuals' concealed pistol licenses should be revoked.

4. I have read Plaintiffs' Complaint, and I understand that Plaintiffs have brought a constitutional challenge to the District's holster regulation, 24 DCMR § 2344.2.

5. The holster regulation requires that anyone with a license to carry a pistol in the District must carry the pistol "in a holster on their person in a firmly secure manner that is reasonably designed to prevent loss, theft, or accidental discharge of the pistol." 24 DCMR § 2344.2. Concealed pistol licensees must comply with the holster regulation as a condition of maintaining their license.

6. In my experience, and consistent with MPD's past practices, when the Firearms Registration Branch finds that a licensee has violated the holster regulation, the Firearms Registration Branch usually issues the licensee a notice of proposed revocation of their concealed pistol license based on the violation. However, the violation is usually resolved with an agreement that the individual's license will be suspended for a matter of months, rather than revoked. Violations of the holster regulation are not usually criminally prosecuted.

7. As the language of the regulation makes clear, the holster regulation serves to prevent or reduce the incidence of firearms being stolen, lost, or accidentally discharged within the District of Columbia.

8. The regulation does not require that licensees use any particular kind or form of holster. So long as a holster is reasonably designed to serve the regulation's listed purposes, the requirement is satisfied.

9. A wide variety of holstering devices satisfy the holster regulation. Generally speaking, holster retailers categorize these devices into three levels of "retention strength." The

three retention strength levels roughly correspond to how many security features the holster has, or put differently, how secure a gun is when inside the holster. Level 1 retention generally means that significant friction holds the gun in place—for example, a gun holstered in a tightly sown leather pouch. Level 2 is Level 1 plus a retention device, such as a strap or hood. Level 3 means that there is some sort of mechanical device that interfaces with the gun and needs to be opened to draw the weapon.

10. MPD issues holsters with Level 3 retention to its sworn members for use with their MPD-issued service weapons. These "duty holsters" hold guns in place with a tension screw that creates a tight fit and tension, a hood that covers the back of the slide and must be flipped open, and a latch that must also be pressed open to release the gun. These holsters are secured onto officers' duty belts by closed loops.

11. Duty holsters or similar Level 3 holsters certainly satisfy the holster regulation, but they are not required. Level 1 and Level 2 holsters may also satisfy the regulation.

12. In addition, holsters can be worn in different locations on the body and still satisfy the holster regulation. For example, holsters can be worn under the shoulder or on the thigh or ankle. Also, inside-the-waistband holsters and outside-the-waistband holsters can be worn in different locations at hip-level, including at the strong side of the waist, in a cross-draw position, at the appendix, and at the small of the back. There are many locations on the body where a gun can be holstered in satisfaction of the holster regulation. Many models and makes for holsters at each of these locations are available on the market.

13. Because holsters can be worn on different locations on the body, there are many holstering options that would allow pregnant women to carry, even if they cannot carry using a

holster on a belt around the waist. Indeed, many holstering options are available on the market for pregnant women.

14. In my experience, most holster violations involve the carrying of a gun loosely, for example, placed into a person's waistband or between a layer of compression shorts and the body, or in a jacket pocket. Carrying a loose gun like this in no way meets the purposes of the holster regulation and is a danger to the person wearing the gun and to others.

15. I have reviewed the police reports related to Plaintiffs Eric Christian and Timothy Beck's holster violations. According to the police reports, Plaintiff Christian was found with his loaded gun under the driver's seat in his car, not in a holster or affixed to anything. Similarly, Plaintiff Beck had his gun in a holster but loose inside a bag.

16. Loose carry of guns like this can and does result in negligent discharge or loss of the weapon. A gun carried loosely in a purse, for example, can be discharged when other items in the purse enter the trigger guard and actuate the trigger.

17. A gun in a purse or bag might also be unintentionally left behind in a public place or set away from the licensee in a place where others might find it, including children, or adults who are not trained or licensed to handle the weapon.

18. Purses are also often robbed from the shoulder of a victim. In contrast, I cannot recall anyone ever being relieved of the belt off their pants. Theft can also result in guns ending up in the hands of persons who should not have them.

19. Unholstered guns and off-body carry methods also present serious risks to law enforcement as they perform their duties on the street. One dangerous aspect of working in the field is that officers do not always know who is carrying a gun. That is why one of the first tasks for an officer making a stop, interacting with a member of the public, or securing a scene is to

assess if anyone is armed. Guns in pursues or bags make that task exceedingly more difficult because firearms concealed other than on a person's body are difficult to safely identify and secure.

20. The holster regulation is a necessary and common-sense way of protecting the public from theft, loss, or accidental discharge of firearms.

21. According to MPD records I reviewed, Plaintiff Beck was issued a concealed pistol license in 2021. Plaintiff Christian was issued a license in 2022. Plaintiff de Caro was issued a license in 2018. Plaintiff Reilly was issued a license in 2023. And Plaintiff Russell was issued a license in 2018.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on    12 March 2025   

STEPHEN AMODEO