**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LYNNE ANNE-BRIGITTE RUSSELL,** *et al.*, | |
| **Plaintiffs,** | **No. 1:24-cv-01820-JDB** |
| **v.** | |
| **DISTRICT OF COLUMBIA,** *et al.*, | |
| **Defendants.** | |

**DEFENDANTS' RESPONSE TO**
**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiffs notify the Court of an erroneous decision, and worse still, ask the Court to commit the same errors. Pls.' Not. of Supp. Auth. (Pls.' Not.) [43] (citing *McDaniels v. State*, No. 1D2023-0533, 2025 WL 2608688 (Fla. Dist. Ct. App. Sept. 10, 2025)). In *McDaniels*, a Florida intermediate appellate court struck down Florida's ban on open carry. *McDaniels*, 2025 WL 2608688, at \*1. Although such laws have been enacted in several states, *McDaniels* became the first court to invalidate one in the more than three years since the Supreme Court decided *New York State Pistol & Rifle Ass'n*, 597 U.S. 1 (2022).

*McDaniels* should have no application here. At the outset, *McDaniels* did not involve a challenge to a holster rule or similar law. As a result, the specific, alleged burdens at issue here—for example, that safe holstering on the body occasionally clashes with Plaintiffs' preferences—were simply not at issue in *McDaniels*. And whether states must allow open carry also is not at issue here because Plaintiffs explicitly declined to challenge the District's law on open carry. Mem. of P. & A. in Supp. of Pls.' Mot. for Partial Summ. J. [30-2] at 41 n.17. Beyond these basic limitations, *McDaniels* was wrongly decided, for two main reasons.

First, *McDaniels* did not apply Supreme Court precedent or the correct legal analysis. Foremost, the court defied *United States v. Rahimi*, 602 U.S. 680 (2024). The court explained that "three landmark decisions" "define the contours of the Second Amendment right and establish the framework by which firearms regulations must be judged." *McDaniels*, 2025 WL 2608688, at *2. Those decisions were *Bruen*, *Heller*, and *McDonald*. *Id.* The court did not consider *Rahimi* at all as part of the framework. As a result, the court did not analyze "whether the challenged regulation is consistent with the *principles* that underpin our regulatory tradition." *Rahimi*, 602 U.S. at 692 (emphasis added). There is zero discussion of historical "principles" in the opinion. Instead, the court struck down Florida's longstanding law primarily because it did not precisely match historical laws that banned concealed carry while allowing open carry. *McDaniels*, 2025 WL 2608688, at *8–11. The court thus demanded the very "law trapped in amber" that *Rahimi* eschews. *Rahimi*, 602 U.S. at 691. In fact, that critical holding from *Rahimi* is nowhere in the court's opinion (nor was it ever in Plaintiffs' briefs for that matter).

Compounding its legal errors, *McDaniels* did not even consider *Heller*'s and *Bruen*'s holdings about manner-of-carry regulations. The court did not consider or mention *Heller*'s holding that the Second Amendment is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). Nor did the court consider or mention *Bruen*'s holding—repeated multiple times in the opinion—that "*the manner* of public carry was subject to reasonable regulation." 597 U.S. at 59 (emphasis in original); *see also id.* at 38, 70. Those are the key holdings in a challenge to a manner-of-carry regulation, yet *McDaniels* did not discuss them at all.

Unsurprisingly, then, *McDaniels* is an outlier. Every other court to address similar laws post-*Bruen* upheld the challenged law because, unlike *McDaniels* or Plaintiffs here, those courts

faithfully followed Supreme Court precedent on manner of carry.  *E.g.*, *O'Neil v. Neronha*, No. 23-cv-70, 2025 WL 2197313, at *3 (D.R.I. Aug. 1, 2025), *appeal docketed*, No. 25-1814 (1st Cir. Aug. 28, 2025); *Sinnissippi Rod & Gun Club, Inc. v. Raoul*, 253 N.E.3d 346, 353–58 (Ill. Ct. App. 2024); *cf.  Koons v. Att'y Gen. N.J.*, --- F.4th ----, ----, No. 23-1900, 2025 WL 2612055, at *18 (3d Cir. Sept. 10, 2025) (deducing the historical principle that "legislatures may impose conditions on the carry of weapons outside the home that are designed to ensure that those who choose to carry such weapons do so safely").[1]  *McDaniels* does not address those cases either.

Second, *McDaniels* gets the history wrong.  *McDaniels* rejected the state's reliance on historical concealed carry bans and historical case law upholding them because, according to *McDaniels*, that history only shows that states could ban concealed carry if they allowed open carry.  2025 WL 2608688, at *8–11.  This was the main basis of the court's opinion.  *Id.*  But as the District's unrebutted expert historian testimony emphasizes, this "'manner-of-carry exchange' argument" "is not supported by the historical record."  Defs.' Ex. 14 [32-16] ¶ 10; *see also id.* ¶ 22.  *McDaniels* does not appear to have featured any testimony from expert historians on the subject.  In addition, *McDaniels* failed to consider a number of historical sources marshalled in this case explaining that the relevant constitutional principle is not that open carry must be allowed, but that the government can reasonably regulate manner of carry so long as it does not prevent carrying.  *E.g.*, *Andrews v. State*, 50 Tenn. 165 (1871).  Further, *McDaniels* found, based on selective quotations from a handful of historical cases, that "open carry was the default mode of bearing arms."  *McDaniels*, 2025 WL 2608688, at *9.  But as expert testimony

---

[1]      Although there was a dissent in *Koons*, which the majority sharply criticized for its "ahistorical vision of the Second Amendment" and "insurmountable" test for Second Amendment challenges, 2025 WL 2612055, at *18–19 & n.89, even the dissent recognized that "the *mode* of carry" was historically subject to regulation, *id.* at *59 (Porter, J., concurring in the judgment in part and dissenting in part) (emphasis in original).

here also explains, open carry was not the default because it "was not only inconvenient in light of men's dress at the time, but also reflected poorly upon the wearer as a ruffian or coward pitting himself against social norms."  Defs.' Ex. 14 ¶ 15.

Despite all this, Plaintiffs urge the Court to follow *McDaniels* for two reasons.  First, *McDaniels* found that the challenger there satisfied step one of *Bruen*.  Pls.' Not. at 4.  But Florida did not contest whether the challenger had satisfied step one and did not make the many arguments the District makes here.  *McDaniels*, 2025 WL 2608688, at *6.  In any event, *McDaniels* is in fact unhelpful to Plaintiffs on step one.  *McDaniels* explained that *Heller* defines carrying protected by the Second Amendment as "carrying '*upon* the person' or . . . carrying '*in* the clothing or *in* a pocket.'"  *Id.* (emphases in original) (quoting *Heller*, 554 U.S. at 584).  Accordingly, *Heller* does not define carrying to include off-body carry, which is the issue here; so off-body carry is not textually protected conduct.  *See Bruen*, 597 U.S. at 32 (reaffirming *Heller*'s understanding of "bear arms").

Second, Plaintiffs argue that *McDaniels* correctly found that "restrictions on the manner of carry historically have been narrowly directed at weapons carry that presented a threat of violence to the populace."  Pls.' Not. at 4.  In other words, according to Plaintiffs, states *cannot* regulate manner of carry to prevent theft, other crimes, injuries, accidental discharge, or any other harms that are not strictly "violence to the populace."  That is not only startling but wrong.  As explained before, historically, governments have always had the power to regulate manner of carry to protect against a variety of harms identified by the people's representatives and were not limited to regulating manner of carry to prevent only violence.  *E.g.*, Mem. of P. & A. in Supp. of Defs.' Mot. for Summ. J. [33] at 35–41.  And contrary to what *McDaniels* and Plaintiffs say, concealed carry was historically banned not just because it was associated with

"sneak attacks and assassinations," Pls.' Not. at 4, but more broadly because concealed carry was perceived as dangerous and socially undesirable, Defs.' Ex. 14 ¶¶ 15, 22.  Indeed, as the Third Circuit just explained after a far more thorough review of historical laws than *McDaniels*'s, "historical carry restrictions" served "manifold goals," and "[c]ourts overlook" those varied goals "at their peril." *Koons*, 2025 WL 2612055, at *19.  Regardless, Plaintiffs continue to insist on an identical "why"—an error that *McDaniels* made but this Court should not repeat.

Date: September 11, 2025

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Civil Litigation Division, Equity Section

*/s/ Honey Morton*
HONEY MORTON [1019878]
Assistant Chief, Equity Section

*/s/ Adam J. Tuetken*
ADAM J. TUETKEN [242215]
Special Counsel for Firearm Safety
MATEYA B. KELLEY [888219451]
Assistant Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
(202) 735-7474
adam.tuetken@dc.gov

*Counsel for Defendants*